**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Araceli King, | : |
|  | : |
| Plaintiff, | : |
|  | : Civil Action No.:  1:14-cv-02018-AKH |
| v. | : |
|  | : |
| Time Warner Cable, Inc., | : |
|  | : |
| Defendant. | : |
|  | : |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Araceli King ("King"), through undersigned counsel, hereby respectfully submits this Brief in support of her Motion for Summary Judgment against Defendant Time Warner Cable, Inc. ("TWC").

## SUMMARY

TWC violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA").  The undisputed facts in this case show that: (1) TWC called King's cellular telephone without King's consent 163 times; (2) TWC continued to call King's cellular telephone despite King's numerous requests for the calls to stop; (3) TWC used an automatic telephone dialing system ("ATDS") and/or a prerecorded voice to make the calls; and (4) TWC did not have King's prior express consent to make the calls.

Pursuant to 47 U.S.C. § 227(b)(3), TWC is liable for $234,500.00 in damages for its 163 calls to the Plaintiff, 153 of which were willful and knowing.

## STATEMENT OF FACTS

### I.   The Calls to King

King is a resident of Irwing, Texas. (PSUF[1] at 1).  On July 14, 2012, Plaintiff subscribed to telephone number (915) 861-0528 (the "0528 Number"). (PSUF at 2).   The 0528 Number is a cellular telephone number serviced by Sprint. (PSUF at 3).  Plaintiff  pays  Sprint  approximately $89.00 per month for her cellular telephone service. (PSUF at 4).

Plaintiff  has  had  Defendant  Time  Warner  Cable,  Inc.'s  ("TWC")  services  for approximately ten years. (PSUF at 5).   Plaintiff provided the 0528 Number to TWC in connection with her TWC account. (PSUF at 6).  Plaintiff did not provide the 0528 Number to TWC for any other purpose. (PSUF at 7).

On July 3, 2013, Plaintiff began receiving calls from TWC on the 0528 Number for "Luiz Perez."  (PSUF  at  8).    The  account  number  associated  with  Mr.  Perez's  account  is 8260170544640054 (the "Perez Account"). (PSUF at 9).  TWC's calls to the 0528 Number for the Perez Account came from telephone number (800) 892-2253. (PSUF at 10).  Between July 3, 2013 and August 11, 2014, TWC placed 163 calls to the 0528 Number on the Perez Account. (PSUF at 11).

### II.   TWC's IVR Dialer

TWC used its Enterprise Outbound Interactive Voice Response ("IVR") dialer to place all 163 calls to the 0528 number. (PSUF at 12).  The IVR is a computerized system that automatically imports calling lists to be dialed. (PSUF at 13).  The IVR is completely automated and does not require human intervention to make calls. (PSUF at 14).  The IVR is designed and configured to play a prerecorded message on every call. (PSUF at 15). The IVR has the capacity

---

[1] "PSUF" Refers to Plaintiff's Rule 56.1 Statement of Undisputed Facts, submitted in support of this Motion.

to store numbers and dial such numbers. (PSUF at 16-17).

When Plaintiff answered the calls from TWC, or when she listened to voicemail messages left by TWC, she heard a prerecorded message. (PSUF at 18).  Some of TWC's voicemail messages were silent, lasting only few seconds. (PSUF at 19).  TWC's prerecorded messages stated that TWC was calling for "Luiz Perez" regarding his overdue account balance. (PSUF at 20).

## III.   King's Requests to Stop the Calls

Plaintiff does not know Luiz Perez and did not consent to receive calls from TWC on the 0528 Number with regard to the Perez Account. (PSUF at 21-22).  On October 3, 2013, in a call lasting about seven minutes, Plaintiff spoke to TWC and asked that it stop calling the 0528 Number regarding the Perez Account. (PSUF at 23).  The October 3, 2013 call was the tenth call from TWC to the 0528 Number regarding the Perez Account, following which TWC placed 153 additional calls to the 0528 Number on the Perez Account. (PSUF at 24).

On January 7, 2014, in a call lasting about three minutes, Plaintiff spoke to TWC and again requested that the calls regarding the Perez Account stop. (PSUF at 25).  TWC placed 123 calls to the 0528 Number regarding the Perez Account after January 7, 2014. (PSUF at 26).

On March 26, 2014, TWC accepted service of the Summons and Complaint in this action, which again placed TWC on notice that it did not have consent to place automated calls to the 0528 Number regarding the Perez Account. (PSUF at 27).  TWC placed 74 calls to the 0528 Number regarding the Perez Account after March 26, 2014. (PSUF at 28).

On June 23, 2014, Plaintiff's counsel asked TWC to stop placing calls to the 0528 Number. (PSUF at 29).  TWC placed 14 calls to the 0528 number after June 23, 2014. (PSUF at 30).

**IV.**   **FCC's TCPA Ruling**

On June 18, 2015, the Federal Communications Commission ("FCC") adopted a proposal to strengthen the protection of consumers against unwanted robocalls. (PSUF at 31).  In its June 18, 2015, ruling FCC held that "[c]onsumers have the right to revoke their consent to receive robocalls and robotexts in any reasonable way at any time." (PSUF at 32).  FCC further held that " 'Autodialer' is defined in the [Telephone Consumer Protection] Act as any technology with the capacity to dial random or sequential numbers," and that an "Autodiler" definition includes a calling technology that calls consumers from a list of numbers. (PSUF at 33-34).

**ARGUMENT**

**I.**   **Legal Standard**

Summary Judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 175, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law." *Id.* at 248.

The moving party is responsible for:

informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions

4

on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the movant satisfies its initial burden, the burden shifts to the opposing party who, in order to defeat the motion, must establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson V. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986)), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

Here there is no genuine issue of material fact that:

- TWC placed 163 calls to King's cellular telephone, 153 of which were knowing and willful;

- TWC used an automatic telephone dialing system ("ATDS") and/or a prerecorded voice to make the calls; and

- TWC did not have King's prior express consent to make the calls.

## II.   __The TCPA__

Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls. *Mims v. Arrow Fin. Servs., LLC*, —U.S.—, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012).  The TCPA makes it unlawful to place:

> any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).  Therefore to establish a TCPA violation, King must show that TWC (1) called her on her cellular telephone and (2) used an ATDS or prerecorded voice to make such calls.

The TCPA is a strict liability statute.  Plaintiff is not required to prove intent (except when awarding treble damages); the initial violation itself gives rise to liability. *Echevvaria v. Diversified Consultants, Inc.*, 13 CIV. 4980 LAK AJP, 2014 WL 929275 *4 (S.D.N.Y. Feb. 28, 2014) *citing Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir.), *cert. denied*, —— U.S. ——, 132 S.Ct. 553, 181 L.Ed.2d 397 (2011); *see also, e.g., Branham v. ISI Alarms, Inc.*, No. 12–CV–1012, 2013 WL 4710588 at *8 (E.D.N.Y. Aug. 30, 2013).

Prior express consent is an affirmative defense to an alleged TCPA violation, for which TWC bears the burden of proof.  *Echevvaria*, 2014 WL 929275 at *7; *Levy v. Receivables Performance Mgmt.*, LLC, 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013).  Prior express consent must come from the "called party." 47 U.S.C. §§ 227(b)(1)(A)(iii) & 227(b)(1)(B); *see Echevvaria*, 2014 WL 929275 at *7; *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1267 (11th Cir.  2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F .3d 1242, 1251 (11th Cir. 2014);

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640 (7th Cir. 2012).  Here, TWC cannot assert that it had King's express consent to call her on her cellular telephone in regard to the Perez Account. (PSUF at 6-7, 22).

### III.    TWC Called King's Cellular Telephone

TWC called the 0528 Number 163 times between July 3, 2013 and August 11, 2014, using the IVR dialer. (PSUF at 8-20). The 0528 Number was King's cellular telephone number during that time. (PSUF at 2-3).  Thus, the first element of King's TCPA claim is satisfied.

### IV.    TWC's IVR Dialer is an ATDS

The second element is also satisfied; the IVR dialer is an ATDS.  The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *See* 47 U.S.C. § 227(a)(1); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it."); *FCC Strengthens Consumer Protections Against Unwanted Calls And Texts* (Federal Communications Commission, June 18, 2015) (" 'Autodialer' is defined in the Act as any technology with the capacity to dial random or sequential numbers" and "Autodiler" definition includes a calling technology that calls consumers from a list of numbers). (PSUF at 31-34).

The undisputed facts show that TWC's IVR dialer is a computerized system that automatically imports calling lists to be dialed. (PSUF at 13).  TWC's IVR dialer is completely automated and does not require human intervention to make calls from the calling lists that it itself imports. (PSUF at 14).  Further, TWC's IVR dialer has the capacity to store numbers (PSUF at 16) and to dial such numbers. (PSUF at 17).  Therefore, under the straightforward definition of an ATDS set forth in the TCPA, the TWC's IVR dialer is an ATDS.

TWC's IVR dialer is also an ATDS because it uses a prerecorded message on its calls. (PSUF at 15).  When King answered the calls from TWC, or when she listened to the messages left by TWC on her cellular telephone, she heard a prerecorded message. (PSUF at 18).  Some of TWC's voicemail messages were silent, lasting only few seconds. (PSUF at 18).   The prerecorded voice messages from TWC delivered a payment reminder. (PSUF at 20).  The TCPA prohibits calls to a cellular phone featuring a prerecorded voice when the called party has not consented to receive such calls. 47 U.S.C. § 227(b)(1)(A)(iii).

## V.   King Did Not Consent to Receive Calls on The Perez Account

Prior express consent is an affirmative defense to an alleged TCPA violation. *Echevvaria*, 2014 WL 929275 at *7; *Levy*, 972 F. Supp. 2d at 417.  Prior express consent must come from the "called party." *See* 47 U.S.C. §§ 227(b)(1)(A)(iii) & 227(b)(1)(B).  'Called party' means the "person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 643 (7th Cir. 2012) (*as cited in Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 420 (E.D.N.Y. 2013)); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) (Under TCPA "called party" does not mean intended recipient of the call but subscriber to the cell phone service).

Here, it is undisputed that TWC did not have King's consent to call her cellular telephone using an ATDS or a prerecorded voice in regard to the Perez Account. (PSUF at 6-7, 22).

## VI.   TWC Violated The TCPA Each Time it Dialed King on The Perez Account

TWC violated the TCPA each time it made or initiated a call to King on the Perez Account.  The TCPA makes it unlawful "to *make* any call." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis supplied).  To prove a violation of the TCPA, plaintiff must show that: "a call *was placed* to a cell or wireless phone." *Echevvaria*, 2014 WL 929275 at *4 (emphasis supplied); *see*

*also Castro v. Green Tree Servicing LLC*, 2013 WL 4105196, \*18 (S.D.N.Y., Aug. 14, 2013) ("the TCPA clearly restricts the making of any call using an automatic telephone dialing system to a cellular phone, and does not distinguish between calls that are picked up and calls that go to voicemail."). "The TCPA is essentially a strict liability statute which imposes liability for erroneous unsolicited [calls]." *Alea London Ltd. v. American Home Services, Inc.,* 638 F.3d 768, 776 (11 Cir.2011) (*quoting Penzer v. Transp. Ins. Co.,* 545 F.3d 1303, 1311 (11th Cir.2008)).

Thus, the law prohibits the making, or the initiation, of such call, irrespective of whether TWC succeeds in reaching the called party. *See also* 47 CFR 64.1200 ("No person or entity may… *initiate* any telephone call …using an automatic telephone dialing system or an artificial or prerecorded voice … [t]o any telephone number assigned to … cellular telephone service") (emphasis supplied); 47 U.S.C. § 227(b)(1)(B) ("It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States - to *initiate* any telephone call to any residential telephone line . . . .") (emphasis supplied); 47 U.S.C. § 227(d)(1)(A) ("It shall be unlawful for any person within the United States - to *initiate* any communication using a telephone facsimile machine … ") (emphasis supplied).

TWC dialed the 0528 Number 163 times between July 3, 2013 and August 11, 2014, using its IVR dialer. (PSUF at 11).  Every call was a violation.

## VII.   Damages

### A.  Minimum Statutory Damages

The TCPA provides, at a minimum, "$500 in damages for each such violation" of the Act. 47 U.S.C. § 227(b)(3)(B).  TWC placed 163 ATDS calls to King. (PSUF at 11).  As such, at a minimum, TWC is liable to King for $81,500.00 in statutory damages.

### B.  Treble Damages

The TCPA provides for trebling of damages when the "defendant willfully, or knowingly

9

violated" the TCPA. 47 U.S.C. § 227(b)(3).  There is a split of authority as to what constitutes a willful or knowing violation:

> The court in *Texas v. Am. Blastfax, Inc.,* 164 F.Supp.2d 892 (W.D.Tex.2001), adopted a heightened standard because "[t]he Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Id.* at 899. Other courts, however, have interpreted willful or knowing to mean volitional or intentional, requiring that a plaintiff need only show that a defendant voluntarily made the impermissible communication that violated the TCPA. *See, e.g., Bridgeview Health Care Ctr. Ltd. v. Clark,* No. 09 C 5601, 2013 WL 1154206 at *7 (N.D.Ill. Mar.19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute."); *Stewart v. Regent Asset Mgmt. Solutions,* No. 10–CV–2552, 2011 WL 1766018 at *7 (N.D.Ga. May 4, 2011); *Sengenberger v. Credit Control Svcs., Inc.,* No. 09 C 2796, 2010 WL 1791270 at *6 (N.D.Ill. May 5, 2010), *adhered to on reconsideration,* 2010 WL 6373008 (N.D.Ill. June 17, 2010).

*Echevvaria*, 2014 WL 929275 at *9.

Like in *Echevvaria*, TWC's conduct satisfies either standard.  *See id.* at *11 ("[T]he Court finds that Diversified's conduct was willful because Diversified knew or should have known that (1) it was using LiveVox, that was (or at least might be held to be) an ATDS and (2) it was calling the wrong person despite being notified of the error on February 1, 2013.").  First, TWC knew or should have known that its IVR dialer, configured to dial telephone numbers from lists and play prerecorded voice messages, was an ATDS.  TWC's Rule 30(b)(6) designee, David Zitko, testified that TWC's IVR dialer has the capacity to store telephone numbers and dial them, and that it is designed and configured to automatically create dialing lists and calls numbers from the lists without human intervention. (PSUF at 12-17)  Moreover, TWC is aware of TCPA restrictions on ATDS, including through its prior TCPA litigation. *See Time Warner Cable*

*Telemarketing And Do Not Call Policy*[2]; *Comments of Time Warner Cable, Inc., In the Matter of Petition for Rulemaking of ACA International* (Federal Communications Commission, March 24, 2014)[3]; *Sherrod v. Time Warner Cable, Inc.*, 2014 WL 6603879, at *1 (S.D.N.Y. Nov. 21, 2014); *Fontes v. Time Warner Cable Inc.*, 2014 WL 2153919 (C.D. Cal. May 19, 2014); *Masters v. Time Warner Cable, Inc.*, 920 F. Supp. 2d 766, 768 (W.D. Tex. 2012)

Second, TWC knew or should have known that it was calling the wrong person.  On October 3, 2013, in a conversation lasting about seven minutes, King told TWC that she was not Luiz Perez and asked that all calls to her cellular telephone in regard to the Perez Account stop. (PSUF at 21, 23).  Nevertheless, TWC placed 153 additional calls to the 0528 Number on the Perez Account. (PSUF at 24).  Pursuant to 47 U.S.C. § 227(b)(3), TWC should pay $5,000.00 in damages for ten calls it placed to King prior to her October 3, 2013, request to stop, and $229,500.00 for 153 willful and knowing calls on the Perez Account after King's request to stop. *See Echevvaria*, 2014 WL 929275 at *12 (defendant ordered to pay $39,500.00 in damages for its twenty-seven violations of the TCPA, twenty-six of which were willful or knowing); *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 896 (E.D. Mich. 2012) (treble damages awarded where defendants continued to call after being put on notice that plaintiff's phone number was not associated with another person's account - defendants were in a better position to review its system to ensure that plaintiff's number was not tied to any remaining accounts); *FCC Strengthens Consumer Protections Against Unwanted Calls And Texts* (Federal Communications Commission, June 18, 2015) ("Consumers have the right to revoke their

---

[2] *Time Warner Cable Telemarketing And Do Not Call Policy* is available at https://www.timewarnercable.com/content/dam/Corporate/PDFs/About-Us/Regulatory/FCC_Do_Not_Call_-_PacWest.pdf (last visited on June 19, 2015).

[3] *Comments of Time Warner Cable, Inc., In the Matter of Petition for Rulemaking of ACA International* (Federal Communications Commission, March 24, 2014) is available at http://apps.fcc.gov/ecfs/document/view?id=7521095012 (last visited on June 19, 2015).

consent to receive robocalls and robotexts in any reasonable way at any time."). (PSUF at 31-32).

## CONCLUSION

Based the foregoing, Plaintiff respectfully requests the Court grant her motion for summary judgment on her claim under the Telephone Consumer Protection Act and enter a judgment against TWC for $$234,500.00 in damages for its 163 calls to the Plaintiff, 153 of which were willful and knowing.

Dated: June 22, 2015

Respectfully submitted,

By   */s/ Sergei Lemberg*
  Sergei Lemberg, Esq.
  LEMBERG LAW, LLC
  1100 Summer Street, 3rd Floor
  Stamford, CT 06905
  Telephone: (203) 653-2250
  Facsimile:  (203) 653-3424
  Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on June 22, 2015, I electronically filed the foregoing through the CM/ECF system which sent notice of such filing to the following:

Charles D. Cole, Jr.
Newman Myers Kreines Gross Harris, P.C.
40 Wall Street
New York, New York 10005-1335
*Attorneys for Defendant*

*/s/ Sergei Lemberg*
Sergei Lemberg
