UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                           :

ARACELI KING ,                                :
                                           :

                           Plaintiff,    :

   -against-                              :
                                           :

TIME WARNER CABLE,                 :
                                           :

                         Defendant.   :
                                           :
------------------------------------------------------------ X

**ORDER AND OPINION
DENYING STAY AND
GRANTING SUMMARY
JUDGMENT**

14 Civ. 2018 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

         Plaintiff Araceli King brings this action against Defendant Time Warner Cable for

violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq.*

King alleges that Time Warner placed 163 automated or prerecorded calls to her cellular phone

without her consent and seeks statutory damages of $81,500, before trebling. On May 7, 2015,

Time Warner moved to stay the trial, currently scheduled to begin on July 27, 2015, until after

the Federal Communications Commission ("FCC") issues interpretive guidance on the definition

of "called party" under the statute. On June 23, 2015 Plaintiff moved for summary judgment, and

on July 2, 2015, Defendant cross-moved. For the following reasons, the motion to stay is denied,

Plaintiff's motion for summary judgment is granted in part, and Defendant's motion for

summary judgment is granted in part.

<b>THE TCPA</b>

         The TCPA, passed in response to "[v]oluminous consumer complaints about

abuses of telephone technology" such as "computerized calls dispatched to private homes . . .

bans certain invasive telemarketing practices." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740,

744 (2012). Relevant to this case, the statute prohibits any person from "mak[ing] any call (other

than . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A). The statute defines "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). The TCPA creates a private right of action for affected consumers, and allows them to recover the greater of their actual monetary loss or $500 for each violation. *Id.* § 227(b)(3). It also allows the district court to increase the award up to treble statutory damages if it finds the defendant's violation was willful or knowing. *Id.*

## BACKGROUND

Time Warner Cable ("TWC") is a national cable telecommunications company based in New York City. Araceli King is a Texas resident and a long-time customer of TWC. When customers sign up with TWC, they must agree to the company's terms of service, which include, in relevant part, the following:

> We may call any number you provide to us (or that we issue to you) for any purpose, including marketing of our Services. . . . However, if you ask to have your number placed on our "do not call" list, we will not call you at that number for marketing purposes. . . .We may use automated dialing systems or artificial or recorded voices to call you.

Time Warner Cable Residential Services Subscriber Agreement § 12(c), Zitko Decl. p. 14.

As part of its business, TWC operates an "interactive voice response" calling system ("IVR") which it uses, among other things, to advise customers that their accounts are more than 30 days past due. The system automatically references TWC's billing records to determine which customers are more than 30 days late on their payments, and then dials the number associated with their accounts. If the customer answers the call, the IVR system will not

2

call that customer's number until the following day or, if the customer pays the outstanding balance, it will not call until the account again falls more than 30 days behind. If the customer does not answer the call, the IVR system will leave a voicemail and attempt to call back up to two additional times that day. Regardless of whether the call is answered by the customer or the customer's voicemail, the IVR system plays a recorded message.

Araceli King subscribes to the telephone number (915) 861-0528 through the cellular carrier Sprint and provided her cellular number to TWC in connection with her service. Between July 3, 2013 and August 11, 2014, King alleges that she received 163 phone calls from TWC using the IVR system. Each time she answered or listened to the resulting voicemail, a recorded message indicated that it was seeking "Luiz Perez."[1] Perez, the parties agree, is an unrelated customer who had opened an account with TWC in February 2012 using the same phone number that Sprint later assigned to King. King represents that she did not consent to any of the calls. She also asserts that 153 of the calls were "willful or knowing" TCPA violations subject to treble damages because they came after October 3, 2013, when King answered a call and, in a seven minute conversation, "told a TWC representative that she was not Luiz Perez and asked that all calls to her cellular telephone in regard to the Perez Account stop." Pl.'s Mem. of Law at 11, ECF Doc. No. 25. Indeed, 74 of the 163 calls came after TWC had accepted service of the Summons and Complaint in this action on March 26, 2014.

TWC does not dispute the number of calls it placed to Ms. King, although it notes that only 70 of the calls resulted in recorded messages being played to Ms. King or her voicemail. It argues that the remaining 93 calls do not violate the TCPA because the IVR system is not an automatic dialing system under the Act. TWC also contends that Ms. King lacks

---

[1] Although the more common spelling of the customer's name is "Luis," I will spell it the way TWC does for purposes of this opinion.

constitutional standing because she has not suffered any harm, that she in fact consented to the calls under the customer agreement, and that TWC believed it was calling Luiz Perez, who had given consent. The last argument is relevant to both TWC's liability and its willfulness for purposes of treble damages.

## MOTION TO STAY

"[P]rior express consent by the called party" is a safe harbor against liability under the TCPA, 47 U.S.C. § 227(b)(1)(A), and TWC claims that Luiz Perez, the prior owner of Ms. King's phone number, consented to receive calls regarding his past due account balance. TWC argues that, because it intended to reach Luiz Perez at the number (915) 861-0528, Mr. Perez's consent shields TWC from liability regardless of who actually received the call. This defense would require the Court to interpret the term "called party" in the statute to mean the *intended* recipient of the call, rather than the actual recipient or the owner of the called phone line.

In a case with very similar facts, Magistrate Judge McCarthy in the Western District of New York found that "called party" refers to the actual recipient of a phone call. *Sterling v. Mercantile Adjustment Bureau, LLC*, No. 11-cv-639, 2014 WL 1224604 (W.D.N.Y. Sept. 25, 2014). The opinion was affirmed by Judge Arcara, and the caller appealed. The Second Circuit requested an amicus brief from the Federal Communications Commission ("FCC") on the issue, but the agency refused to take a position on the ground that petitions on this question were pending before it. *See, e.g.,* Petition for Expedited Declaratory Ruling of United Healthcare Services, Inc., CG Docket No. 02-278 (filed Jan. 16, 2014), *available at* http://appsint.fcc.gov/ecfs/comment/view?id=6017584805. Accordingly, the Court of Appeals stayed the case pending the outcome of the FCC's petitions. *Sterling v. Mercantile Adjustment*

4

*Bureau, LLC*, No. 14-12-47, Doc. No. 74 (2d Cir. Mar. 2, 2015). The FCC has not yet

promulgated rules on the issue or submitted a brief to the Court of Appeals, but on June 18,

2015, it adopted a package of declaratory rulings that it summarized in a press release. In

relevant part, it says that "Reassigned Numbers Aren't Loopholes – If a phone number has been

reassigned, companies must stop calling the number after one call." Press Release, Federal

Communications Commission, FCC Strengthens Consumer Protections against Unwanted Calls

and Texts (June 18, 2015), *available at* https://www.fcc.gov/document/fcc-strengthens-

consumer-protections-against-unwanted-calls-and-texts ("FCC June 18, 2015 Declaratory

Rulings Press Release.").

   TWC asks this Court to stay the proceedings as well pending the FCC's

submission to the Court of Appeals. Under the doctrine of primary jurisdiction, a federal court

may "refer a matter extending beyond the conventional experiences of judges or falling within

the realm of administrative discretion to an administrative agency with more specialized

experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 222-

23 (2d Cir. 1995) (internal quotations omitted). "Wise use of the doctrine necessitates a careful

balance of the benefits to be derived from utilization of agency processes as against the costs in

complication and delay." *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 321 (1973). It

should generally be reserved for "resolution of an issue of first impression, or of a particularly

complicated issue that Congress has committed to a regulatory agency." *Jovel v. i-Health, Inc.*,

No. 12-cv-5614, 2013 WL 5437065, at *8 (E.D.N.Y. Sep. 27, 2013). Where a legal question is

"within the conventional competence of the courts," agency guidance is not likely to be helpful.

*Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 854 (2d Cir. 1988) (quoting *Nader v.

Allegheny Airlines, Inc.*, 426 U.S. 290, 305-06 (1976).

Primary jurisdiction is not properly invoked here, where the benefit of waiting is slight and, with jury selection scheduled to begin in less than three weeks, the disruption caused by a delay would be great. The meaning of the clause "prior express consent of the called party" in a generally applicable law like the TCPA presents a question of conventional statutory interpretation requiring no technical expertise. The text is clear and unambiguous on its face: *called party* means the party that was called. If Congress intended to refer to the party that the caller *wanted* to reach when it dialed the number, it would have used different language. Further, the Second Circuit appears to be an outlier in delaying its decision. The other circuits to consider the meaning of *called party* have interpreted it to mean the *actual* recipient of the call, as I do, and they have reached their decisions without difficulty. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012) ("We conclude that 'called party' in § 227(b)(1) means the person subscribing to the number at the time the call is made."). Many district courts have, too. *E.g., Harris v. World Financial Network Nat. Bank*, 867 F. Supp. 2d 888 (E.D. Mich. 2012). Indeed, the issue is not nearly as contested as TWC portrays it. While several district courts have agreed to stay proceedings pending the FCC's input, the Court is not aware of any decision that has found "called party" to mean "meant-to-have-called party." My interpretation is also supported by the FCC's notes of its June 18, 2015 meeting, which suggest that any future FCC rulemaking or submission to the Court of Appeals on the issue will likely track the interpretation adopted by the courts. *See* FCC June 18, 2015 Declaratory Rulings Press Release, *supra*.

Defendant's motion to stay is denied. "Called party" clearly refers to the party actually called. Defendant's intent is relevant only on the issue of willfulness.

## SUMMARY JUDGMENT

### I.   <u>Legal Standard</u>

Summary judgment is appropriate where the evidentiary record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(e). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In opposing summary judgment, the non-moving party must present more than a "scintilla of evidence," *id.* at 252 or "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### II.   <u>Plaintiff's TCPA Claim</u>

To make out a claim under the TCPA, King must show that (1) TWC called her on her cell phone; (2) using an automated telephone dialing system or pre-recorded voice; (3) without her consent. *See* 47 U.S.C. § 227(b)(1)(A). There is no genuine dispute that TWC called King 163 times on her cell phone using an ("ATDS"). However, Defendant argues that the IVR was not an ATDS, that only 70 of the 163 calls were actually connected, and that TWC had Plaintiff's consent throughout. Each of these arguments fails.

#### a.   <u>ATDS Includes TWC's IVR</u>

TWC argues that its IVR system does not qualify as an ATDS because it did not generate numbers to dial at random or in sequence. Rather, it made a list of customers that met certain criteria—specifically customers who were behind on their bills—and dialed them. It argues that the list could just as easily have been created by a human. But TWC ignores the fact that the lists were not created by a human. In fact, it has not identified any human involvement at

all in any stage of the customer selection, list compilation, or dialing processes. The method is fully automated from start to finish. And TWC's argument regarding random number generation fails as well. An ATDS is "equipment which *has the capacity* . . . to store or produce telephone numbers to be called." 47 U.S.C. § 227(a)(1) (emphasis added); *Satterfield v. Simon & Shuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (A "system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it" for § 227(a) to apply.). This is a low bar. The FCC's declaratory rulings from June 18 reinforce that an autodialer is "any technology with the *capacity* to dial random or sequential numbers. This definition ensures that robo-callers cannot skirt consumer consent requirements through changes in calling technology design or by calling from a list of numbers." *See* FCC June 18, 2015 Declaratory Rulings Press Release, *supra*. Plaintiff has alleged, and Defendant has not credibly refuted, that the IVR had the requisite capacity. Whether it *actually* dialed King's number randomly or from a list is irrelevant. The IVR was an ATDS under § 227(a)(1).

      **b.  <u>Unanswered Calls Count</u>**

        TWC disputes the number of calls for which it can be held liable on the ground that a pre-recorded voice was played on only the 70 occasions that the calls were connected. But the TCPA makes it unlawful to "*make* any call . . . using any automatic telephone dialing system *or* an artificial or prerecorded voice." *Id.* (emphasis added). Its plain language applies to both pre-recorded voice messages and use of an ATDS; they are alternative theories of liability. TWC violated the statute each time it placed a call using its ATDS without consent, regardless of whether the call was answered by a person, a machine, or not at all. *See Castro v. Green Tree Servicing LLC*, No. 10-cv-7211, 2013 WL 4105196, at *18 (S.D.N.Y. Aug. 14, 2013) ("[F]or purposes of Plaintiffs' TCPA claim, it is immaterial whether the Plaintiffs picked up all of

Defendants' calls or whether several of the calls went unanswered."); *Satterfield v. Simon &*
*Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009) (holding that "to call" in the TCPA means
"to communicate with or *try to get in communication with* a person by telephone.") (emphasis
added); *Fillichio v. M.R.S. Accocs.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct.
19, 2010) (The TCPA "does not include [] a requirement . . . that the recipient of a call must
answer the phone or somehow be aware of the call in order for there to be a violation."); .
TWC's argument merely highlights that 70 of those calls were doubly-improper, as they used
*both* an ATDS *and* a pre-recorded voice.

### c.   <u>Consent Was Invalid After October 3, 2013</u>

The TCPA creates a safe harbor for calls made "with the prior express consent of
the called party." 47 U.S.C. § 227(b)(1)(A). Prior consent is "an affirmative defense for which
the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs. L.P.*, 449 F. App'x 598,
600 n.1 (9th Cir. 2011) (citing *2008 Declaratory Ruling*, 23 F.C.C. Rcd. 559, 565 ¶ 10, 2008 WL
65485 (F.C.C. Jan. 4, 2008)("we conclude that the creditor should be responsible for
demonstrating that the consumer provided prior express consent."); *Echevvaria v. Diversified
Consultants, Inc.*, No. 13-cv-4980, 2014 WL 929275, at *7 (S.D.N.Y. Feb. 28, 2014).[2]

On the question of consent, I divide the calls into two categories. The first
category consists of the ten calls that TWC made between July 3, 2013 and October 3, 2013,
when King informed a TWC representative she was not Luiz Perez, and asked that TWC stop
calling her. For these calls, the broad consent given to TWC under the company's Service
Agreement (§ 12) ("We may call you . . . for any purpose . . . .") supports TWC's defense of
consent. I therefore grant summary judgment in favor of TWC with respect to these calls

---

[2] Defendant argues, without support, that consent is not an affirmative defense but rather a component of Plaintiff's case-in-chief. The distinction would not affect the Court's analysis, however, so it is not relevant.

The second category, consisting of the 153 calls placed after October 3, 2013, is another matter. "Consumers have the right to revoke their consent to receive robocalls . . . in any reasonable way at any time." FCC June 18, 2015 Declaratory Rulings Press Release, *supra*; *Gager v. Dell Fin. Svcs., LLC*, 727 F.3d 265 (3d Cir. 2013) (Consumer who gave creditor her phone number as part of her computer financing could revoke consent to receive automated calls. The creditor could still call her, but it had to do so manually.). There is no doubt that King made this revocation. She so testified in her declaration, under penalty of perjury, *See* King Decl. ¶ 9, and her Sprint call records show an incoming call from a TWC number on October 3, 2013 that lasted over seven minutes. Lemberg Decl. Ex. 4, p 14. Although TWC denies that Plaintiff made the request, it does so only on the ground that it lacks sufficient information to verify Plaintiff's claim. *See* Lemberg Decl. Ex. 7 (Deposition of David W. Zitko) at 91-92 (Q: "[T]here are some occasions where it looks like [King] was transferred to [a representative] but that's where the knowledge ends for Time Warner Cable?" A: "Well, the knowledge is that there's also no notes on the account."). Plaintiff's phone records corroborate her claim and Defendant's absence of evidence fails to contradict it. I therefore find that King validly revoked her consent on October 3, 2013. Summary judgment is granted in favor of Plaintiff for all calls placed after that date.

### d.  Treble Damages Are Appropriate

The Court may award up to treble damages if it finds that a defendant's violation was knowing or willful. After October 3, 2013, TWC had knowledge through its agent that King did not consent to further robo-calls. Therefore, Defendant's subsequent calls were knowing violations and treble damages are appropriate.

TWC's defense is further belied by its conduct after March 26, 2014, when King sued TWC and served the company with the Summons and Complaint in this action. TWC's

10

assertion that it lacked such knowledge of non-consent after that date is incredible. Defendant harassed Plaintiff with robo-calls until she had to resort to a lawsuit to make the calls stop, and even then TWC could not be bothered to update the information in its IVR system. The calls placed after March 26, 2014 are particularly egregious violations of the TCPA and indicate that TWC simply did not take this lawsuit seriously. Treble damages are unquestionably appropriate to reflect the seriousness of TWC's willful violations.

       The recurring theme in TWC's briefs is that it is an unwitting victim of an unpredictable statute which was not intended to turn "what most people think of as an innocuous call to a wrong number" into large damages awards. TWC argues that damages would deter legitimate businesses from reaching out with useful information to customers that wish to be contacted. Mem. of Law in Supp. of Mot. to Stay, at 3, 6. But the statute is not unpredictable; companies like TWC are on clear notice that autodialing phones is prohibited by default. If a business wishes to contract around that rule with its customers, it may, but the risk of error falls on the caller, so it should take care to ensure that it is calling the right people with information they actually want to receive. A responsible business in TWC's position might have dispatched a live agent to reach out to Luiz Perez after the IVR failed to reach him the first several times.[3] Whether the agent's call were answered by Ms. King or her voicemail, the agent would quickly realize the mistake and fix the company's records so that the machine would not contact her anymore. The responsible company will reduce its exposure dramatically by taking proactive steps to mitigate damages, while its competitor, who unthinkingly robo-dials the same person

---

[3] It could also use reverse lookup to identify the current subscriber to the cell number. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012). With so many simple precautionary measures available, there is no need for businesses to simply abandon autodialing, as TWC predicts will happen in the face of TCPA damages.

hundreds of time over many months without pausing to wonder why it cannot reach him, cannot

complain about much higher liability. [4] In sounding the alarm about over-deterrence, TWC also

misapprehends Congress's intent: whatever balance Congress sought to strike between protecting

consumers and enabling businesses to reach them is inapplicable where, as here, the caller is

merely harassing its customers about outstanding bills.

### III.   Standing

Defendant argues that Plaintiff lacks standing under the Constitution to sue

because she has not suffered an injury-in-fact, specifically monetary loss, from the plethora of

phone calls. This argument is frivolous. "Standing under Article III of the Constitution requires

that an injury be concrete, particularized, and actual or imminent; fairly traceable to the

challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed*

*Farms*, 561 U.S. 139, 149 (2010). Congress cannot transform "generalized grievances" by

undifferentiated members of the public into "individual right[s] vindicable in the courts." *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992). However, a Plaintiff need not demonstrate

monetary loss to establish Article III standing. Non-economic injury is sufficient, as long as the

Plaintiff is "himself among the injured" and not merely an undifferentiated member of the

public. *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1971).

Congress "may create a statutory right or entitlement[,] the alleged deprivation of

which can confer standing to sue even where the plaintiff would have suffered no judicially

cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975). A

statutory right is cognizable under Article III as long as the process of vindicating it "consist[s]

---

12

of obtaining compensation for, or preventing, the violation of [the] right." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000).

"The TCPA, in this instance, creates such a cognizable right." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1252 (11th Cir. 2015) (Holding that the recipient of a fax had Article III standing to bring action under the TCPA because it was deprived of use of its fax machine for a single minute during the connection process, even though Plaintiff could not prove that any employee saw the fax in question or even that Plaintiff's machine printed the fax.). The legislative history of the TCPA makes clear that the provision against autodialing was drafted to protect "consumers who pay additional fees for cellular phones, pagers, or unlisted numbers [and] are inconvenienced and even charged for receiving unsolicited calls from automatic dialer systems." *See* H.R. Rep. No. 102-317, at 24 (1991). In receiving 163 unsolicited calls, Plaintiff clearly experienced the very sort of inconvenience against which Congress sought to protect her. She is entitled to seek compensation for violations of this right, regardless of whether she suffered *monetary* damages. *See Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 491 (7th Cir. 2014). (Judge Posner explaining that "no monetary loss need to be shown to entitle the [] recipient to statutory damages [under the TCPA]. . . [,] for such damages not only serve to compensate for injuries difficult to estimate in dollar terms, but also, like statutory compensation for whistleblowers, operate as bounties, increasing the incentives for private enforcement of law.").

## CONCLUSION

The motion to stay is denied. Summary judgment is granted in favor of Defendant with respect to the 10 calls placed before October 3, 2013. Summary judgment is granted in

13

favor of Plaintiff with respect to the 153 calls placed after October 3, 2013. Plaintiff is entitled to enhanced damages in the amount of $1,500 per violation.

With no remaining issues to resolve, the trial scheduled for July 27, 2015 is canceled. The Clerk shall enter judgment in favor of Plaintiff in the amount of $229,500, mark the motions (Doc. Nos. 12, 23, 29) terminated, and mark the case closed.

SO ORDERED.

Dated:    July 7, 2015
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

14